UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAURA L. CHARTRAW,

        Plaintiff,

  v.                                  Case No. 16-C-807

CITY OF SHAWANO and
MARK KOHL,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Laura L. Chartraw filed the instant action against Defendants City of Shawano and her supervisor, Chief of Police Mark Kohl, seeking relief for sex discrimination and retaliation. Chartraw has filed a motion to compel documents relating to an investigation by an attorney retained by the City of another female employee's complaints of discrimination against Chief Kohl, which arose during the investigation into Chartraw's own claims. The defendants claim these documents are protected by the attorney-client privilege and the work product doctrine. The parties submitted briefs on the issue and on November 8, 2017, the court held a hearing on the motion. For the following reasons, Chartraw's motion will be denied.

### BACKGROUND

**I. Allegations of Complaint**

Chartraw is employed by the City of Shawano's Police Department as its Support Services Manager. Am. Compl. ¶ 10, ECF No. 3. She reports directly to Chief of Police Mark Kohl, who she claims has made numerous offensive comments about her appearance in February of 2015. *Id.*

¶ 11. Chartraw also alleged that on multiple occasions in February and March of 2015, Chief Kohl made offensive comments about Officer Nicole Hoffmann, a female co-worker, concerning her chest size, her weight, and her eating habits. *Id.* ¶ 13. Although Chartraw told Chief Kohl that his comments were inappropriate and made her feel uncomfortable, and reported his comments to Lieutenants Musolff and Rabideau, she alleges that he again made offensive comments to her about her appearance in April 2015. *Id.* ¶¶ 11, 12, 14. When she again confronted him about his comments, Chief Kohl laughed and said that was the way he talked to his wife and daughter. Chartraw alleges Kohl continued to make rude comments to women and made demands of them that he did not make of the male employees, such as requiring them to personally greet him, smile more, report to him when they came and went from the office, and make eye contact with him. *Id.* ¶¶ 15, 16, 18. When she continued to complain, Chartraw alleges that Chief Kohl retaliated against her by yelling at her, criticizing her work, removing authority, isolating her, and undermining the trust and confidence of her subordinates. *Id.* ¶¶ 19–25.

Chartaw alleges that she complained to both Brian Knapp, the City Administrator, and Lorna Marquardt, the mayor, but the abuse continued. *Id.* ¶¶ 29–35. At one point, Chartraw alleges, Chief Kohl told her he was going to give her a 2% salary increase, but decided not to because she refused to act as his confidential secretary and relate to him what his subordinates say about him. *Id.* ¶ 42. Chartraw claims that Chief Kohl's conduct toward her and the City's failure to prevent and correct his discriminatory and retaliatory conduct has caused, and continues to cause, her to suffer substantial mental and emotional distress and inconvenience, as well as monetary loss. *Id.* ¶¶ 47, 48, 50, 54. She seeks declaratory relief and compensatory and punitive damages.

**II. The Investigation**

The City of Shawano's Employee Personnel Policy contains a procedure for reporting harassing or retaliatory conduct at work. It provides,

> As an employee of the City/Utility, you have an obligation to report any harassing or retaliatory conduct which you either witness, or is specifically directed at you as an individual, or that you learn from any credible source is effecting you or some other employee of the City/Utility, that you feel is offensive and unwelcome. . . .
>
> An employee that has been the target or witness of harassment, discrimination, or physical abuse shall immediately report the matter to their immediate supervisor, Department Manager, or City Administrator/Utility Manager. . . .
>
> The City Administrator or Utility Manager or his/her designee shall investigate the matter promptly and take appropriate remedial action along with department heads and elected officials. The results of the investigation shall be promptly communicated to the complaining party together with the remedial actions proposed and/or taken, if any, to stop similar occurrences of further harassment and/or discrimination, if any.

ECF No. 31-3 at 7.

In accordance with this policy, the City initiated an investigation of Chartraw's claims. Attorney James Kalny was retained to conduct the investigation. Attorney Kalny, his firm, and its predecessor have served as the City's general labor and employment counsel for some thirty years. ECF No. 36 at 1. In the course of his investigation of Chartraw's complaint, Kalny interviewed Officer Hoffmann on March 2, 2016. At the close of her interview about Chief Kohl's comments pertaining to Officer Hoffmann's appearance, Officer Hoffmann advised Kalny that she believed Chief Kohl denied her a promotion on the basis of her sex and detailed her experience for him. Kalny then initiated a separate investigation into Officer Hoffmann's allegations regarding the failure to promote accusation. He conducted recorded interviews with Chief Kohl as well as Lieutenant Mauel as part of the Hoffmann investigation, but the digital recordings were subsequently recorded over and not retained by Kalny or his firm.

3

While the investigation of Chartraw's complaint was going on, Officer Hoffmann retained counsel and on March 21, 2016, made a six-figure demand on the City under threat of litigation. Based on his investigation of Hoffman's complaint, Kalny submitted a report to City Administrator Knapp detailing his preliminary findings and his recommendations on March 25, 2016. The City did not communicate the results of the investigation or the findings in this report to Hoffmann. Hoffmann ultimately filed a lawsuit against Chief Kohl on May 19, 2016, which was settled and dismissed on stipulation of the parties on February 9, 2017. E.D. Wis. Case No. 16-C-0589.

Chartraw has received the entire interview Attorney Kalny conducted of Officer Hoffmann. Chartraw contends, however, that the defendants have refused to provide her with additional investigative materials pertaining to the Hoffmann-specific investigation. On August 24, 2017, Chartraw served a subpoena duces tecum on Attorney Kalny, seeking all documents related to the Hoffmann investigation. ECF No. 31-5. Kalny responded to the subpoena by producing a privilege log. ECF No. 31-6. On September 29, 2017, Chartraw filed a motion to compel the defendants to produce all documents pertaining to Kalny's investigation into the issues raised by Officer Hoffmann.

**III. Documents at Issue**

The documents and evidence at issue in the instant motion are summarized as follows: (1) recorded interviews with Chief Kohl and Lieutenant Mauel; (2) Attorney Kalny's written notes taken at the interviews of Chief Kohl and Lieutenant Mauel, along with the questions he put to them; (3) questions and notes concerning communications with Officer Jeffrey Lenzner; (4) Preliminary Findings and Recommendations in the Hoffmann investigation; and (5) missing documents. Though concerned over the loss of the actual recorded interviews of Chief Kohl and Lieutenant Mauel, counsel for Chartraw concedes that the court cannot order the defendants to produce what they do

4

not have. There is no evidence that the loss of this material was the result of anything more than inadvertence. With the actual interviews lost, however, Chartraw argues that the defendants should be required to turn over Attorney Kalny's notes of his interviews and the list of questions he posed. These include document number 4206198, which purports to be a document prepared by Kalny on March 9, 2016 entitled "Interview Questions for Chief." Document number 4352676 appears to be a document created by Kalny on March 9, 2016 entitled "Chief Kohl Interview docs and notes of 3/9/16." Document number 4352675 claims to be a document prepared by Kalny on March 9, 2016 entitled "Lt. Mauel Interview outline and notes of 3/9/2016." Document number 4205876 purports to be a document created by Kalny on March 27, 2016 entitled "Chief and Nicole Follow Up," though there was no follow-up interview of Hoffmann.

Chartraw also sought several documents related to Kalny's request for a statement from Jeff Lenzner. Document number 4208630 purports to be an email from Kalny to Jesse Crowe on March 14, 2016, with a subject line of "need for statement from Jeff Lenzner." Document number 4208637 appears to be another email from Kalny to Crowe on March 14, 2016 with the same subject line, "need for statement from Jeff Lenzner." Document number 4211797 purports to be an email from Kalny to Crowe on March 23, 2016 with the subject line "need for statement from Jeff Lenzner." Document number 4213897 appears to be a March 31, 2016 email from Jeffrey Lenzner to Kalny and Crowe with the subject line "Shawano Investigation." At the hearing, the defendants agreed to turn these items over, noting that Lenzner ultimately refused to provide a statement, so they are no longer at issue. The parties were also able to resolve confusion over what Chartraw had referred to as missing documents from one of the privilege logs she was provided.

5

What remains is the March 25, 2016 document entitled "Nicole Hoffmann Investigation - Preliminary Findings and Recommendations", which was sent to City Administrator Knapp and presented to the City's Personnel Committee in closed session. The defendants contend that both Attorney Kalny's Preliminary Findings and Recommendations in the Hoffmann investigation and his personal notes and questions pertaining to the interviews he conducted of Chief Kohl and Lieutenant Mauel in connection with the Hoffmann investigation fall under the attorney-client and/or work product privilege.

## LEGAL PRINCIPLES

### I. Attorney-Client Privilege

"The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394–99 (1981); *Trammel v. United States*, 445 U.S. 40, 51 (1980)). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. In determining whether certain communication falls within the attorney-client privilege, a court must ask "(1) whether 'legal advice of any kind [was] sought . . . from a professional legal adviser in his capacity as such'; and (2) whether the communication was 'relat[ed] to that purpose' and 'made in confidence . . . by the client." *Sandra T.E.*, 600 F.3d at 618 (quoting *United States v. Evans*, 113 F. 3d 1457, 1461 (7th Cir. 1997) (alterations in original)). "[T]he attorney-client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside

the litigation context." *Id.* at 621. The party asserting the privilege has the burden to establish its elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Although the privilege belongs to the client, her attorney may assert the privilege on her behalf. *Sandra T.E.*, 600 F.3d at 618.

With respect to investigations conducted by an attorney, the privilege "protects communications made in the course of an attorney's factual investigation when that investigation is made in order to provide legal advice." *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010) (citing *Sandra T.E.*, 600 F.3d at 619–20). However, the attorney-client privilege does not "protect business decision advice, even when that business advice is rendered by an attorney or an attorney is one of those participating in the business decision." *Id.*

**II. Work-Product Doctrine**

The work-product doctrine is a qualified privilege and is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3); *see also In re Special Sept. 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir. 1980) ("[T]he work product doctrine may encompass any document prepared in anticipation of litigation by or for the attorney."). In determining whether the protection applies, a court must consider whether "in light of the factual context 'the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d

7

1109, 1119 (7th Cir. 1983)). "While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co.*, 709 F.2d at 1119. Thus, whether a document is protected by work product "depends on the motivation behind its preparation, rather than on the person who prepares it." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000). Materials or investigative reports "that are created in the ordinary course of business or that would have been created irrespective of litigation" are not protected by the doctrine. *Id.*; *see also Binks Mfg. Co.*, 709 F.2d at 1118 ("The work product rule does not come into play merely because there is a remote prospect of future litigation." (quotation omitted)). The party asserting the doctrine has the burden to establish that it applies. *Logan*, 96 F.3d at 976.

There are two categories of work product: "opinion" work product, which reflects the attorney's mental processes, and "fact" or "ordinary" work product. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768–69 (7th Cir. 2006). While both are "generally protected" and discoverable in limited circumstances, opinion work product is more "scrupulously protected." *Caremark*, 195 F.R.D. at 616 (citation omitted); *see also* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). That is, while the work-product doctrine may be overcome as to fact or ordinary work product when the party seeking the materials shows a substantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship, Fed. R. Civ. P. 23(b)(3)(A)(ii), opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship . . . . [A] far stronger showing of

8

necessity and unavailability by other means . . . would be necessary to compel disclosure." *Upjohn Co.*, 449 U.S. at 401–02. Opinion work product is protected even when the movant establishes the existence of undue hardship, and therefore is for "all intents and purposes absolute." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 2000 WL 1898518, at *3 (N.D. Ill. 2000).

## ANALYSIS

In support of their position that the requested documents are privileged, the defendants rely on *Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612 (7th Cir. 2010). In that case, the victims of sexual assault committed by a teacher brought a 42 U.S.C. § 1983 action against the school district and principal. *Id.* at 615. In response to the criminal charges, the public outcry, and the filing of the civil lawsuit, the School Board retained Sidley Austin LLP to conduct an internal investigation into the matter. *Id.* at 616. Sidley was to specifically "investigate the response of the school administration to allegations of sexual abuse of students and to provide legal services in connection with the investigation." *Id.* (internal quotation marks omitted). During discovery, the plaintiffs issued a subpoena for the documents in Sidley's possession relating to the investigation. The district court found that Sidley had been hired to provide investigative, rather than legal, services and ordered the firm to produce the documents. *Id.* at 615.

The Seventh Circuit reversed. It noted that the engagement letter between the School Board and the law firm indicated Sidley was retained to provide both investigative and legal services. *Id.* at 619. As a result, the factual investigation performed by the attorneys as attorneys fell "comfortably within the protection of the attorney-client privilege." *Id.* The court also concluded that the work-product doctrine also protected the materials at issue from being disclosed to the plaintiffs because Sidley was hired in response to the actual filing of a lawsuit, and thus, the documents were created for the purpose of litigation. *Id.* at 621.

9

Chartraw asserts that *Sandra T.E.* is distinguishable from the instant case because the Hoffmann investigation stemmed from the investigation regarding her own complaints that arose pursuant to the City's Employee Personnel Policy. She argues that Attorney Kalny was hired primarily as an investigator and not as legal counsel. While that may be the case for the Chartraw investigation, the same cannot be said for the Hoffmann investigation. Chartraw followed the procedures established by the City's Employee Personnel Policy and filed a formal complaint with the City. Conversely, Attorney Kalny initiated the Hoffmann investigation not in the ordinary course of business but with an eye toward litigation. During the course of the investigation, Kalny drafted interview questions for Chief Kohl and retained notes from the interviews of Chief Kohl and Lieutenant Mauel. Shortly after she made her claims in the March 2, 2016 interview with Kalny, Hoffmann retained counsel and less than three weeks later, made a six-figure demand on the City under threat of litigation.

Based on these actions, the prospect of litigation was not remote. On March 25, 2016, four days after Hoffmann's attorney submitted her demand, Kalny submitted a report to the city administrator detailing his preliminary findings and recommendations. He only submitted this report to city officials, and the results of the investigation were not shared with Hoffmann. In sum, the defendants have established that in light of the factual context in this case, Attorney Kalny's interview notes and reports "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan*, 96 F.3d at 976–77; *see also Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970) ("Where an attorney personally prepares a memorandum of an interview of a witness with an eye toward litigation such memorandum qualifies as work product even though the lawyer functioned primarily as an investigator.").

Not only are Kalny's interview notes and his reports regarding his preliminary findings and recommendations work product, they are considered opinion work product because they contain Attorney Kalny's mental impressions, conclusions, opinions, and legal theories pertaining to Hoffmann's claims and her eventual lawsuit against Chief Kohl. *See Hickman v. Taylor*, 329 U.S. 495, 513 (1947) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes."). Kalny's notes and reports contain more than just facts related to the investigation, and accordingly, they are opinion work product and are protected from discovery. Even though Chartraw contends that obtaining the same information through depositions or other means would "taint" the information she receives, she has failed to demonstrate the requisite cause to overcome the "heightened protection afforded an attorney's mental impressions and opinions." *Logan*, 96 F.3d at 676 n.4.

Chartraw asserts that even if the documents are privileged or protected by the work-product doctrine, the defendants have waived any protection or privilege relating to these documents by raising what is commonly referred to as the *Faragher/Ellerth* affirmative defense. In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), the Supreme Court held that absent a tangible employment action, an employer may defend against liability or damages if it can prove: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807–08.

In the instant case, the defendants assert that "Defendants exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and that "Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the City of Shawano or to avoid harm otherwise when the alleged harassment began." Defs.' Ans. ¶¶ 58–59, ECF No. 8. But while the defendants have asserted the *Faragher/Ellerth* defense with respect to the Chartraw investigation, they have not raised it in regards to the Hoffmann investigation. Again, the Chartraw and Hoffmann investigations are separate and distinct. Chartraw's investigation occurred as a matter of course pursuant to the City's Personnel Policy after she made formal complaints of Chief Kohl's lewd comments concerning herself and other women to the City. Conversely, Kalny initiated the Hoffmann investigation himself after learning about Hoffmann's failure to promote allegations, with an eye toward litigation. In short, the defendants' assertion of the *Faragher/Ellerth* defense with respect to Chartraw's complaints and investigation does not waive the right to invoke work-product protection as to documents created and obtained during the course of the Hoffmann investigation. Therefore, Chartraw's motion must be denied.

## CONCLUSION

For the foregoing reasons, Chartraw's Second Civil L.R. 7(h) Expedited Motion to Compel (ECF No. 29) is **DENIED**.

Dated this  14th  day of November, 2017.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court